M. J. Haden
Staff Attorney
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DERRICK LORENZO STEVENSON,<br><br>    Defendant. | Case No. 4:06-cr-0025-TWH<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS** |

I.    FACTS[1]

On October 31, 2006, Mr. Stevenson, a high school senior, was on his way home from Lathrop High School.  As his father was a member of the U.S. Army, Mr. Stevenson lived on Fort Wainwright with his family.  That day he was giving two fellow students, Mary Jane Aguiler and Jessica, a ride home.  Mr. Stevenson entered the base through the gate off Airport Way.  Because he lived on base, his vehicle had a registration sticker on the windshield.  As he pulled up to the guardhouse, the military police checked

---

[1] The following facts are taken from the discovery materials provided by the government pursuant to Rule 16 and testimony that Mr. Stevenson expects will be produced during the evidentiary hearing.

his registration and asked for his identification. He produced a valid military dependant identification card. He was allowed to enter the base without incident.

Once on base, he continued on his way. First he took Jessica home. Then, he and Mary Jane decided to get a bite to eat at Burger King. After leaving Burger King, the two continued towards Mary Jane's home. At approximately 3:05 p.m., as Mr. Stevenson traveled down River Road, he was directed to pull over by a military police officer. Mr. Stevenson obeyed the officer's order and pulled his vehicle to the side of the road.

The officer was conducting a Random Antiterrorism Management Program (RAMP) inspection. The officer asked Mr. Stevenson for his identification and documents related to the vehicle. Mr. Stevenson complied by providing the officer with all the necessary documentation that showed he was legally licenced to drive and that he was legally on the base. The officer then ordered Mr. Stevenson and Mary Jane out of the vehicle. He also directed Mr. Stevenson to open his hood, trunk and all passenger doors. Mr. Stevenson and Mary Jane were ordered to stand approximately 25 yards from the vehicle while the officers search the car. Found in the passenger compartment of the vehicle was a "nickle" bag of marijuana and two marijuana pipes with residue.

After waiting over an hour by the side of the road, Mr. Stevenson was eventually transported to the military police station. At the station he was further detained for over two hours while military police officers searched his quarters. During his detention, he gave two statements regarding the items found in the vehicle, one at 5:21 p.m. and one at 7:46 p.m. He was later released to his mother.

II.   ARGUMENT

    A.   Officers Lacked Reasonable Suspicion Necessary to Detain Mr. Stevenson's Vehicle

There is no question that stopping a moving vehicle and detaining its occupants, even temporarily and for a limited purpose, constitutes a seizure within the meaning of the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809-10 (1996); United States v. Hensley, 469 U.S. 221, 226 (1985). Investigatory stops of vehicles must be supported by "a particularized and objective basis for suspecting" criminal activity. United States v. Cortez, 449 U.S. 411, 417 (1981). In order to satisfy the Fourth Amendment, "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." Cortez, 449 U.S. at 417; Terry v. Ohio, 392 U.S. 1 (1968). An unparticularized suspicion or mere hunch will not meet this standard. Rather, the officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Terry, 392 U.S. at 21. An investigatory traffic stop must be objectively grounded in the governing traffic law. United States v. Lopez-Soto, 205 F.3d 1101, 1106 (9th Cir. 2000). Where this particularized information and inference was lacking, the Ninth Circuit has found that reasonable suspicion did not exist. See Hernandez-Alvarado, 891 F.2d at 1416-17.

    Here there was no evidence to suggest that Mr. Stevenson was violating any traffic laws or that the officers had any reason to believe that he was he was engaged in any criminal activity. The stop was in violation of the Fourth Amendment reasonable suspicion requirement.

B.   Stop Does Not Fall Under Checkpoint Exception

In determining whether a stop conducted at a checkpoint meets the reasonableness test, the court should consider the following non-exclusive factors: (1) the primary purpose of the check point; (2) whether all vehicle are stopped; (3) whether the officers exercise discretion over the checkpoint's operation; (4) whether the checkpoint is well identified; and (5) whether the stop involves a minimal intrusion.  United States v. Soto-Camacho, 58 F.3d 408, 411 (9th Cir. 1995); United States v. Hernandez, 739 F.2d 484, 487-88 (9th Cir. 1984).  Here an evidentiary hearing is necessary to examine the above factors.

The Supreme Court has upheld checkpoints that are designed to enforce traffic safety regulations.  Mich. Dep't of State Police v. Sitz, 496 U.S. 444, 451 (1990) (holding that sobriety checkpoint advance a substantial public interest by preventing drunk driving); Delaware v. Prouse, 440 U.S. 648, 663 (1979) (roadblock with the purpose of verifying drivers' licenses and vehicle registrations are permissible).  Indeed, checkpoints at the entry and exit gates of military bases have been found to meet the reasonableness requirement of the Fourth Amendment.  United States v. Hawkins, 249 F.3d 867 (9th Cir. 2001).  However, the Court has never approved a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing.

In City of Indianapolis v. Edmond, 531 U.S. 32 (2000), the Supreme Court held that a road block with the primary purpose of checking for drug violation was unreasonable and required individualized suspicion.  The court stated, "[w]e have never approved a checkpoint program whose primary purpose was to detect evidence of ordinary

criminal wrongdoing. Rather, our checkpoint cases have recognized only limited exceptions to the general rule that a seizure must be accompanied by some measure of individualized suspicion." Id. at 41.

The seizure of Mr. Stevenson's vehicle went far beyond the simple license check or sobriety roadblock. The intrusiveness of the bumper to bumper search of the car by the side of the road was not a minimal interference of Mr. Stevenson's Constitutionally protected liberty. Hence, all evidence gathered as a result of the violation of Mr. Stevenson's Fourth Amendment rights must be suppressed.

    C.    Government's Burden to Show that Warrantless Search Complied with Fourth Amendment

The Fourth Amendment provides that "[t]he right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . ." U.S. Const., amend. IV. Evidence obtained in violation of the Fourth Amendment must be excluded in a federal criminal prosecution. Weeks v. United States, 232 U.S. 383, 398 (1914). "[S]earches and seizures conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions." Minnesota v. Dickerson, 508 U.S. 366, 372 (1993). Because a search or seizure not accompanied by a warrant is presumed to be unreasonable, "[t]he burden is on the Government . . . to show the reasonableness of a warrantless search." United States v. Carbajal, 956 F.2d 924, 930 (9th Cir. 1992). "This includes demonstrating that the search comes within one of the narrow exceptions to the warrant requirement." Id. Probable cause must be shown by "a preponderance of the

evidence." United States v. Matlock, 415 U.S. 164 (1974). In United states v. Miles, 480 F.2d 1217 (9th Cir., 1973), the Ninth Circuit held that searches of vehicles entering a portion of a military base could be preformed without probable cause and without a warrant. However, undersigned has found no Ninth Circuit law that extends this administrative search exception beyond the clearly posted entry and exit gates.

Here, Mr. Stevenson was subject to a warrantless stop, search and seizure. The burden is on the government to prove that this warrantless intrusion was justified by an exception to the warrant requirement. If the government fails to meet its heavy burden, all evidence obtained as a result must be suppressed. Wong Sun v. United States, 371 U.S. 471 (1963).

DATED this 21st day of August, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ M. J. Haden
Staff Attorney
Alaska Bar No. 0607047
601 West Fifth Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mj_haden@fd.org

Certification:

I certify that on August 21, 2006, a copy of the foregoing document, with attachments, was served electronically on:

Eve C. Zamora, Esq.

/s/ M. J. Haden